IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JULIUS TATE,                          )
                                      )
               Plaintiff,             )
                                      )
          v.                          )    1:06CV169
                                      )
MAJOR DUNNIGAN, LT. LUNDSFORD,        )
ORANGE CO. JAIL MEDICAL STAFF,        )
OFFICER OAKLEY,                       )
                                      )
               Defendants.            )
```

**MEMORANDUM OPINION AND ORDER**

**Eliason, Magistrate Judge**

Plaintiff, a former prisoner of the State of North Carolina, seeks damages from Defendants under 18 U.S.C. § 1983 based on allegations that: (1) he received inadequate medical care, (2) he was given improper food, (3) his grievances were ignored, and (4) he was forced to sleep on the floor in a crowded room with rodents running about during a six-day stay in the Orange County Jail. Defendants and Plaintiff have both moved for summary judgment.

It should be noted that Plaintiff names three individuals and the "Jail Medical staff." The "Staff" is not a person within the meaning of 42 U.S.C. § 1983 and, therefore, is not a party. Vinson v. Richmond Police Dept., 567 F.2d 263 (4th Cir. 1977); Post v. City of Fort Lauderdale, 750 F. Supp. 1131 (S.D. Fla. 1990). Thus, only the three individuals are Defendants. One of the most significant hurdles Plaintiff faces is that he has not set out, for the most part, the individual actions taken or the inaction of each

of the three individuals. For this reason alone, the action can be dismissed.

Before addressing the cross-motions for summary judgment, there are two other matters that need to be quickly addressed. First, Plaintiff has filed a motion to compel. In it, he states that he served Defendants with a request for production of documents on April 11, 2007 and that Defendants failed to respond in a timely fashion. In response to this motion, Defendants have shown that: (1) the envelope bearing the request was not mailed until April 12, 2007, (2) when three days are added for mailing under Fed. R. Civ. P. 6(e) their response was not due until May 15, 2007, and (3) on May 14 and 15, 2007 they did send responsive documents to Plaintiff. Because Defendants did respond to Plaintiff's requests in a timely fashion, his motion to compel is denied for being moot.

Plaintiff has also filed a motion for appointment of counsel. Plaintiff previously filed such a motion (Docket No. 4) and the Court denied it (Docket No. 6). If anything, Plaintiff's ability to litigate this case has improved since that time because he was released from prison more than a year ago. (Docket No. 8.) Plaintiff's latest motion for counsel is denied for this reason, in addition to the reasons set out in the denial of his earlier motion. Having disposed of these preliminary matters, the Court will now address the motions for summary judgment.

**Plaintiff's Facts**

Plaintiff was incarcerated at the Orange County Jail (the Jail) from October 31, 2005 until November 5, 2005. At the time he arrived at the Jail, he told staff that he was recovering from a fracture of his jaw and a subsequent surgery to insert metal plates and screws in his mouth and jaw on June 14, 2006. He produced some supporting documents and x-rays and was told by someone that they would be placed in his file. He also asked to see a doctor.

During his stay, Plaintiff filed several grievance forms. The first, filed on the day of his arrival, states that Plaintiff needed medications for pain and depression. It lists Percocet, Motrin, and Elavil as the medications needed. The second, filed on November 1, 2005, states that Plaintiff is receiving only one of his three medications and that he needs Percocet for pain. He points to the records he brought for support. The next grievance, filed on November 2, 2005, asks to see a doctor, claims that the Jail is not following the documentation Plaintiff brought, and threatens to seek legal help. On November 3, 2005, he filed yet another grievance. This one says only that Plaintiff had severe shooting pains and throbbing in the left side of his face. Finally, on November 4, 2005, Plaintiff filed a grievance asking that he be put on a soft food diet due to his jaw. He was transferred the next day.

In his complaint and in other documents, Plaintiff also claims that he submitted other grievances, that Defendant Lundsford denied a request for a soft food diet until he had seen a doctor, and that

he has continued to have problems with his jaw since leaving the Jail. He now faces further surgery. Additionally, Plaintiff raises complaints that he was forced to sleep on the floor with 20 other inmates in an area designed to hold 12 inmates, that there were rodents running on the floor, and that his grievances were not handled in a timely manner.[1] He seeks to have a further operation performed at the cost of the State, other medical attention, and $350,000 in damages.

## **Defendants' Facts**

Defendants do not dispute many of Plaintiff's facts. They agree with, or at least do not dispute, the dates that he was at the Jail, the fact that he arrived recovering from a jaw fracture and surgery, the fact that he apprised them of this and provided them with some records, the fact that he filed the grievances set out above, and the fact that he did not receive all of the medications he requested.

However, they do add important additional facts that explain the medical treatment given to Plaintiff during his brief stay at the Jail. Plaintiff was given a medical screening at the time he arrived at the Jail. He arrived with no medications, but stated that he was taking Percocet, Elavil, Motrin, and three asthma medications. A nurse practitioner was called by Defendant Oakley. The nurse practitioner prescribed Motrin (also referred to in the record as ibuprofen) and an Albuterol inhaler for Plaintiff. She

---

[1] Plaintiff is not pursuing any complaint related to the fact that he was not given Elavil.

-4-

also asked jail staff to verify the other medications and dosages. Narcotics such as Percocet are not given to inmates under Jail policy except in limited circumstances. Plaintiff gave the name of a person he said could verify the prescriptions by supplying empty bottles, but attempts to reach this person were unsuccessful. The nurse practitioner then had Plaintiff execute a release so that his medical records could be obtained. That release was faxed to the University of North Carolina Hospital. (Docket No. 34.)

Defendants agree that Plaintiff did not receive all of the medications requested in his October 31, 2005 grievance. They explain that he did get the Motrin because it had been prescribed by the nurse practitioner, but did not receive other medications because his medical records had not yet been obtained when the grievance was filed. Therefore, nothing more was done with this grievance. (Id.)

In the next grievance, Plaintiff again requested Elavil, Motrin, and Percocet and complained that he was getting only one of them. This grievance was submitted on November 1, 2005 and handled the next day. Jail staff called Plaintiff's oral surgeon. The surgeon informed them that Plaintiff had missed one appointment in August, had been seen at a second appointment on September 6, 2005, and had no further appointments scheduled. Records from the oral surgeon showed that Plaintiff was originally given prescriptions for Ibuprofen and Percocet and placed on a soft food diet for six weeks following his surgery in June of 2005. However, the

prescriptions expired long before Plaintiff entered the Jail. (Id. Ex. A-1.)

The nurse practitioner then determined to continue giving Plaintiff Motrin, but also continued to look into the other medications. Plaintiff's medical records from UNC Hospital were received later on November 2, 2005. (Id. Ex. J.) They indicated that doctors had decided on September 30, 2005 that they would not refill his Percocet prescription, but would instead give him a fifteen-day supply of Motrin, a five-day supply of Darvocet, and a ten-day supply of Flexeril. (Id.) Based on this, no further medication was given. On November 4, 2005, he was referred to see an oral surgeon. However, he was transferred out of Orange County Jail the next day, which was before he was seen by the surgeon. (Docket No. 34.)

## **Legal Standards**

Plaintiff's central claim is for lack of medical care. In order for Plaintiff to succeed on that claim, he must show that Defendants were deliberately indifferent to a serious medical need. Mere negligence or malpractice is not enough. Estelle v. Gamble, 429 U.S. 97 (1976)(convict); Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990)(pretrial detainee).

As stated by the Fourth Circuit in Johnson, 145 F.3d at 167:

> To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S.

-6-

at 298, 111 S.Ct. at 2324; see <u>Rish v. Johnson</u>, 131 F.3d 1092, 1096 (4th Cir.1997); <u>Williams</u>, 77 F.3d at 761; <u>Strickler v. Waters</u>, 989 F.2d 1375, 1379 (4th Cir.), <u>cert</u>. <u>denied</u>, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

> With regard to inadequate medical attention, the objective component is satisfied by a serious medical condition. . . .
>
> The subjective component is satisfied by showing deliberate indifference by prison officials. . . . Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S.Ct. at 1979; see <u>Amos</u>, 126 F.3d at 610 (stating that "prison officials [must] know of and disregard an objectively serious condition, medical need, or risk of harm"). A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." <u>Farmer</u>, 511 U.S. at 844, 114 S.Ct. at 1982; see <u>Rich v. Bruce</u>, 129 F.3d 336, 338 (4th Cir. 1997)(holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In order to meet this standard, Plaintiff must show that the treatment is grossly incompetent or inadequate to the extent that it shocks the conscience and seems fundamentally unfair. <u>Miltier v. Beorn</u>, 896 F.2d 848 (4th Cir. 1990). The fact that Plaintiff was a pretrial detainee would not materially change Defendants' obligations for the purposes of this case. <u>Gordon v. Kidd</u>, 971 F.2d 1087 (4th Cir. 1992).

Supervisors cannot be expected to ensure physicians employ proper procedures and may not be held liable for treatment errors unless it can be shown they tacitly authorized known inadequate procedures. <u>Id.</u> An officer fulfills his duty by notifying medical personnel. He is not personally responsible to provide medical

-7-

care.  Maddox v. City of Los Angeles, 792 F.2d 1408 (9th Cir. 1986).  To establish liability of an officer, Plaintiff must show that upon an objective assessment, he had a sufficiently serious medical problem requiring treatment and that the officer was aware both of the need and of its seriousness, but acted with deliberate indifference in not procuring medical treatment.  Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995). Deliberate indifference is more than negligence and is akin to criminal law recklessness--not mere disregard of a great risk, but a conscious disregard constituting a gross deviation from the standard of care.  Id. at 105; Kevin F. O'Malley, et al., Federal Jury Practice and Instructions § 17.01 (5th ed. 2000).  Knowledge may be inferred from the obviousness of a serious injury.  Id.

In evaluating a medical care case, the Court may rely on medical records to assess whether an evidentiary hearing is required, Blanks v. Cunningham, 409 F.2d 220 (4th Cir. 1969), and to determine whether the injury is in fact serious, West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978).  The Court may rely on the affidavits of medical personnel and the medical records to determine whether Defendants' efforts were reasonable.  Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981), aff'd without opinion, 676 F.2d 690 (4th Cir. 1982).  When the affidavits show that Plaintiff was under constant medical supervision, he likely is not entitled to relief since medical judgments are not normally subject to review.  Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).  The Court may look at intake examinations, complaints made, treatment

given and its timeliness, physicians' evaluations, and subsequent evaluations. <u>Gray v. Farley</u>, 13 F.3d 142, 146 (4th Cir. 1993)(pretrial).

Here, Defendants were aware that Plaintiff was recovering from jaw surgery and that he was experiencing pain in his mouth and jaw. Assuming for the purposes of this opinion that Plaintiff's problems were a serious medical condition, he has satisfied the first element of his claim. The only question then is whether he can show that Defendants were deliberately indifferent to his condition. This is a high standard and requires more than mistake or negligence on the part of Defendants.

The undisputed evidence in the case is that Defendants were not deliberately indifferent to Plaintiff's medical needs. Immediately upon being informed of his condition and the medicines he claimed to be taking, the officers and medical staff at the Jail reacted and began taking the steps necessary to confirm his claims. They contacted a nurse practitioner and obtained a prescription for the Motrin Plaintiff wanted and then went to work to confirm the other medications. When no one could be reached at the number Plaintiff himself gave as belonging to a person who could verify the prescriptions, the staff then proceeded to take the steps necessary to obtain Plaintiff's medical records. They sought records from UNC Hospital and Plaintiff's surgeon. It is not clear what more they could have done to attempt to verify Plaintiff's Percocet prescription. They had no power to provide the prescription on their own. Certainly, Plaintiff has not specified

-9-

Case 1:06-cv-00169-RAE   Document 74   Filed 12/07/07   Page 9 of 14

any further step they could have taken.  In any event, as stated previously, officers fulfill their duty by referring persons to medical personnel.  They have no obligation, nor can they provide medical care themselves.

Not only did Defendants exhaust all apparent avenues in attempting to verify Plaintiff's claims that he had a Percocet prescription, but the records they received show that he did not have a valid prescription for that drug at the time he arrived at the Jail.  Plaintiff did <u>at</u> <u>one</u> <u>time</u> have a prescription for Percocet, but it had expired long before October 31, 2005.  He was, at another time, given prescriptions for other drugs, but those too expired before he came to the Jail.  Nothing in the records would have compelled nor even allowed Defendants to issue a prescription for Percocet.  Even at this late date, Plaintiff has still produced no evidence that he actually had a valid prescription for Percocet during the time Defendants were responsible for his care.

Plaintiff also complains that his medical care was inadequate because he did not see a doctor during his brief stay at the Jail.  Even though it is true, this does not show deliberate indifference by Defendants.  Plaintiff's only symptom was post-surgical pain and, as just discussed, Plaintiff was referred to the nurse and the pain was treated with Motrin.  Attempts were made to see if a stronger drug could be given. When these attempts did not succeed, Plaintiff was scheduled to see a doctor. He was simply transferred before the appointment.  This does not show indifference by Defendants.  They did respond to Plaintiff's needs.

Throughout his pleadings Plaintiff also complains that he still needs significant surgery. Somehow, he seeks to hold Defendants responsible for this. However, the record is devoid of any evidence showing that any action or inaction by Defendants contributed to Plaintiff's present need for surgery.[2] The only real issue in this case is whether Defendants appropriately addressed or attempted to address the pain Plaintiff was suffering from his preexisting condition. As already set out, they did.

Another claim by Plaintiff is that Defendant Lundsford did not put him on a soft food diet when he asked for one. Again, this allegation appears to be true, but is not sufficient to establish a claim under § 1983. First, Plaintiff alleges that Lundsford told him that he needed to see a doctor first and Plaintiff has not shown that this was incorrect. Plaintiff was scheduled to see a doctor, but was transferred first. Further, the initial records obtained by Defendants showed that Plaintiff was told on August 4, 2005 to follow a soft, nonchew diet for six weeks following his surgery on June 14, 2005. (Docket No. 34, Ex. A-1.) This would have indicated to Defendants that Plaintiff was off of the modified diet by early August of 2005, nearly three months before he was brought to the Jail. Plaintiff has not shown that any doctors prescribed a soft food diet for him at the time he was in custody and Defendants were aware of the direction. There would have been

---

[2]There is evidence suggesting that Plaintiff himself may have caused his present condition. Plaintiff's medical records note that he refused to follow his doctor's instructions in that he continued to smoke, did not wear elastics, and practiced "deplorable" oral hygiene. (Docket No. 34, Exs. A-1, J.)

-11-

no reason for him to be placed on a special diet based on these records.

The UNC records obtained later on November 2, 2005 do show that Plaintiff was told on September 30, 2005 to follow a "soft mechanical diet." (Id. Ex. J.) However, no time parameters for following that diet are specified, likely because Plaintiff was also instructed to call to set up a further appointment. The instruction was given about a month prior to Plaintiff coming to the Jail. It would not have been clear that Plaintiff still needed that diet a month later and nothing indicates that Lundsford knew of the record in any event. Plaintiff cannot show that Lundsford was deliberately indifferent in not putting him on a soft food diet without any doctor's order to do so. And, again, Plaintiff has not produced any medical evidence that he should have been placed on a soft food diet while he was at the jail.

Plaintiff's final allegation regarding his medical care is that his grievances were not addressed in a timely fashion under the Jail's grievance policy. Plaintiff claims that grievances must receive a written response within five working days of the time they are submitted. (Docket No. 56 ¶ 1.) He claims that this did not occur with his grievances. Even if true, this would not establish a violation of Plaintiff's constitutional rights. A jail or prison's violation of grievance procedures does not establish an independent cause of action under § 1983. Doans v. Rice, No. 87-7244, 1987 WL 38813 (4th Cir. Oct. 15, 1987)(unpublished); Spencer v. Moore, 638 F. Supp. 315 (E.D. Mo. 1986). Rather the substantive

actions of the defendants must be evaluated.  Here, as already discussed, Defendants did not show deliberate indifference to the needs Plaintiff expressed in his grievances.  They may not have responded in the way he wished or even in writing in all cases, but they did respond adequately given the circumstances.

Finally, in addition to his allegations regarding medical care, Petitioner also attempts to raise a claim based on general conditions in the Jail.  He claims that he was forced to sleep on the floor with twenty people in an area designed for twelve and that rats crawled on the floor.  These allegations, even if true, do not meet the stringent standards necessary to show that the overcrowding violated Plaintiff's constitutional rights.  The mere fact that a confinement area may be small, even on a permanent basis, does not constitute cruel and unusual punishment.  See Rhodes v. Chapman, 452 U.S. 337 (1981).  The same is true of situations involving sanitation or cleanliness.  The Court looks at the totality of the situation to see whether there would be sufficient harm to deprive Plaintiff of a specific human necessity.  Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991). Here, Plaintiff claims only that his area was crowded and that rats were in the area.  He does not show that he was deprived of a human necessity or that he suffered any injury.  Further, he was in the Jail for only four full days and parts of two others.  He has not shown that his constitutional rights were violated in this short amount of time.  All of his claims fail and Defendants' motion for summary

-13-

Case 1:06-cv-00169-RAE   Document 74   Filed 12/07/07   Page 13 of 14

judgment will be granted.  Naturally, Plaintiff's cross-motion for summary judgment will be denied.

**IT IS THEREFORE ORDERED** that Plaintiff's motions to compel (Docket No. 42), motion for appointment of counsel (Docket No. 69), and motion for summary judgment (Docket No. 49) are denied.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Docket No. 46) is granted and that this action is dismissed.

　　　　　　　　　　　　　　　　/s/ Russell A. Eliason
　　　　　　　　　　　　　　　　**United States Magistrate Judge**

December 7, 2007